Before the Court. May it please the Court, I have reserved three minutes of rebuttal time. Thank you. Obviously, there are two global issues before the Court today. The one is jurisdictional, and we have that divided into the collateral order doctrine and the potential alternative of a mandamus. The second, of course, is whether there was a clearly erroneous basis for the sanctions order. And not simply as a matter of fact, but substantively under 1927, whether it met the standard, whichever of the standards the Sixth Circuit will adhere to, and if it was procedurally inappropriately imposed. Again, in the amount of the sanction and the way it was imposed without an evidentiary hearing, but only on paper, and without access to the documents. So, our first, the jurisdictional argument. It seems to me that the City of Akron has a syllogism. It says, all sanctioned orders are excluded from the collateral order doctrine. 1927 is a sanctioned order, therefore it's excluded from the collateral order doctrine. The problem with the syllogism, with the false premise, is it's not logical. And the false premise is that all sanctioned orders are excluded from the collateral order doctrine. We know that criminal contempt citations, sanctions pursuant to that exercise of power, are interlocutorily appealable. We also know, of course, and Judge Boggs has helped us, that Rule 37 sanctions are excluded from the collateral order doctrine. They are not interlocutorily appealable. If we look at the continuum then, we've got on the one end, we've got these criminal contempt sanctions. On the other end, we've got Rule 37. I'd submit to you that Rule 11 fits nearer and closer on the continuum to the Rule 37. But the inherent power of the court, and particularly the 1927 sanction, resembles most the criminal sanction. Let's look at it for a second. Vexatious, unreasonable, multiplicity. It's aimed personally at the attorneys. It doesn't reach the parties. It only reaches the attorneys. It's focused on a particular type of behavior, the trial representation, the what was done more than the merits, say, of a 37 on discovery or a Rule 11 on, for example, a frivolous or groundless claim. And I want to be clear. The city of Akron is correct to note how punitive 1927 sanctions are. That doesn't, by the way, justify disregarding that they cannot be in an amount in excess of the harm. That's the plain statutory language. But they're right that it's punitive in nature. Do you have any case to support your position? Can you cite us any case where it held that a rule sanction under Section 1927 is inaugurally appealable? No, Your Honor. I can cite you cases, as we have in the brief, in this circuit, where the assumption has been made that if it is a complete 1927 sanction, it'd be collateral to the merits. As you know, this circuit in both published and unpublished opinions has said on several occasions, you can't appeal a sanction until an amount is set. And it's used, other panels have used the words collateral, and they've used it in the context of collateral to the merits. I think when members of this court use the word collateral to the merits, they know in the back of their minds they're talking about the collateral order doctrine. But in each one of those cases, because the sanction had not been set, it didn't even meet the first aspect of the Cohen doctrine, the collateral order doctrine. It wasn't conclusive. It hadn't been set. But here, you've got severable from the merits. We know that. As you know, we've supplied the court with supplemental authority, which shows that the back pay amount has already been set. The judge didn't refer word one to these sanctions or what went on before. It was able to, in a very clear-cut opinion, figure out what the back pay should be, using, by the way, the witness called as the first witness by the plaintiffs. We've got effectively unreviewable. You have, first of all, the ethical problem this poses for attorneys who have been denounced by a federal district court as engaging in such behavior. And you've also got the way this feeds into other litigation. I supplied the city of Akron a few weeks ago with a brief that was filed in New Haven, Connecticut, firefighter's case, where lead consular had a discovery dispute. They cite Hal versus city of Akron. They cite Fink and Switch. They cite facetious, Rule 1927. You know, these lawyers are involved in cases across the country. They specialize in firefighters and other type of cases of this ilk. Well, Hal versus city of Akron is going to keep on giving for the other side unless they can get it before this court and either by way of interlocutory appeal or mandamus get it changed, because it's being cited and, of course, presumably relied upon by other courts. I think you're going to have even more trouble getting us to agree that mandamus is a basis. Well, Your Honor, I'm a little bit— Mandamus is generally authorized only when it can be corrected on appeal. This could be corrected— Well, it's authorized when it cannot be effectively corrected on appeal. If you think about the cloud or water doctrine, the Cohen third element, not effectively reviewable, then you go over to mandamus, not correctable on appeal, they're basically making the same point, which is if we're going to wait for an appeal of this, then the harm that will be done transcends what could be corrected by a reversal later on. And the reason why that's important is because, as we know from Rule 37, and as I am willing to concede for now Rule 11, those issues merge into the merits. So, of course, they can be reviewed upon appeal. They're naturally and best reviewed at the end of the case, not in piecemeal fashion. When you have a separate retrospective fact-finding, they engage in a bait-and-switch. And it's just—the clear air here is so outrageous. The chronology is so straightforward. They started—they gave out these figures for front pay, for back pay, for emotional damages. They get deposed. At the depositions, the emotional damages are examined. And what's the first switch that occurs in this case? I don't know if it's clear to you. The firefighters abandon the emotional damages claim. So, first of all, they reduced their claim right away after those depositions. Then next comes the issue of front pay. After the depositions, after the depositions, the court says, you know what, if there are going to be appointments and if City of Akron needs firefighters, these plaintiffs pretty much have been waiting around for four to five, six years, and states them that gets rid of the front pay. So now they've reduced again the calculations. Finally, we get to the back pay. It gets reduced further. Towards the very end, before the original scheduled trial, it gets reduced to a two-year rather than four-year period. Along the way, there were switches made. We can see that. The district court kept on changing the basis. Emotional damages are eliminated. Front pay is eliminated. Back pay is curtailed. And now we're at the trial. In the meantime— Let me break in. Let me ask you a couple of practical questions. Absolutely, Your Honor. With respect to what you were just starting out to say about effectively unreviewable on appeal, that's really got to be this kind of reputational damage or other litigation because either they haven't paid the money or they can get it back. Has it been stayed so they haven't actually paid the money? Your Honor, the short of the answer is that the stay is before the panel today, too. What has happened was it was punted to this— They have not actually written a check. That's correct, Your Honor. So that part either hasn't already happened or is reviewable on appeal. You have, as Judge Gilman said, you have any case that says that what I would characterize as reputational damage and litigational unpleasantness can count as something that's unreviewable on appeal? Well, I don't have a case that says that except in the following sense. In Starcher, which becomes Cunningham, there were arguments about reputation, and reputation alone will not suffice. So Starcher is the name of the case? Well, Cunningham. It was Starcher when you wrote the opinion, Your Honor, and it became Cunningham in the Supreme Court. So I want to be clear. I'm telling you I have a case that says reputation alone or insinuates that is not enough. What I'm saying to you is that this is a stigma plus, if you remember the liberty interest. Okay. Other practical question. Now that there has been—we got the 28J letters on both sides— that there has been a monetary amount set. Yes, Your Honor. Has an appeal been filed or is there likely to be one very shortly? An appeal has already been filed, Your Honor, by the city of Akron. Because in a certain sense, in a sort of practical sense, while it's true we have the record and we're talking about what happened at a trial, doesn't it make some practical sense for the same panel that has to assess the whole trial to assess this piece of the trial in that context? Not at all, Your Honor. Not at all. The merits have already been determined on the injunction appeal. A different panel decided that and decided in favor. By the way, the city filed a petition for a hearing on Bonk. It was denied. Now this panel has the issue of sanctions, which are clearly separable from the merits. And then another panel is going to have the issue of whether the back pay was calculated appropriately. Not whether attorneys engage in vexatious, multiplicitous, and unreasonable behavior. I don't want to say a word, Your Honor. Am I wrong that the events that you want us to take up now are events in the same series of days and transactions that led to the calculation of the amounts? Absolutely. The events in this case relate to this case. But it cannot be that that's what makes it effectively unreviewable or effectively reviewable because whatever happens in the case relates in some way to what happens in the case. And the difficulty, I know you put money aside, but I do want to be clear. These are prevailing plaintiffs. I came to this case the same as you three, after the fact. How in the world could prevailing plaintiffs, on their way to a damages hearing, have socked against them $97,000 plus in sanctions? It just didn't make any sense until you look at the chronology and the judge's open expression of his frustration with the original trial and the damages that caused what he essentially rules a mistrial. But if they are hit with this at some point, it's going to affect their ability to continue as plaintiff civil rights lawyers. These are contingent cases. I know firefighters make money, but they have bills, too. And these are taken on a contingency. They've been paid their interim fees, but it's been many years now. This litigation has gone on. And what we say to you in the briefs and what the Neal of Mika's brief tried to point out was that there's a reason for the policy, under Christian's garment, of not having reverse fees. The reason is it has such a chilling effect on the ability of these types of law firms to continue to represent plaintiffs. Let me read you on page 9 of the district court sanction order. It says, quote, plaintiffs failed to provide any legitimate justification for changing this methodology on the eve of trial. What's your response to that? It's totally wrong, Your Honor. And I'll give you three instances and one wrinkle. First, the wrinkle. There was never an evidentiary hearing where the judge could hear from the plaintiff's lawyers as they requested an evidentiary hearing and examine them if the judge wanted in order to explain that. Number one, the judge, through the own examination, got firefighter captain Carr to say, I'm not sure of the date, I'm not sure of the date, but I was on vacation until the 13th. And then, of course, it happened after the order. The judge says, well, I don't think you misspoke. I think you knew ahead of time what the judge was going to rule on the 13th. Point number two, the legitimate reason for this is absolutely clear from the record. Chronology, sequence of events don't lie. The plaintiff's calculations were order disclosed in May 31st. There were depositions then from June 1st to June 14th. On June 15th, the plaintiffs had been asking, please give us your calculations, City of Akron. City of Akron says, no, it's your burden of proof. He said, we want discovery. You have calculations, we'd like to have them. We've got a 30B6 deposition tomorrow. The judge finally says, City of Akron, you've got to give it to them. They go to the deposition. There's an envelope containing the calculations. It's in one of the attorney's hands. The City of Akron attorney takes it out of the hand and says, we're not ready to give that to you. All right, the judge orders on 6-15. On 6-16, it's snatched out of the hands. Maybe they'll get the calculations that week. No. Next week, no. Third week, no. Fourth week, Friday before the originally scheduled date. Afternoon, they get the calculations. Why did the City of Akron not give it to them? What date is that? The date that they were given that was 7-15-11, Your Honor. Okay, thank you. So in other words, we have 6-15, the judge says, hey, it's not burden of proof, it's discovery. 6-16, 30B6. Week one, week two, week three, week four. And at the end of all this, the final coup de grace is that the judge doesn't realize how his changing orders affect the calculations. No legitimate reason to do what? To change? There's plenty of legitimate reason to change when there's no longer front pay. When you eliminate emotional distress damages. When back pay is curtailed by two years. Now, there is one other point. The judge thinks it is illegitimate to change in response to deposition questions. The judge is wrong about that. Deposition questions elicit and expose shortcomings. Lawyers and their clients work to overcome those shortcomings before they go to trial. What the judge thought was illegitimate was that if you say in deposition, I didn't look at these calculations, and a month and a half later, you come to court, I did look at them now, you're sanctioning an offense. That's not sanctioning an offense, that's lawyering. If they want to impeach the clients, the firefighters, for saying, well, that deposition really instructed me on a mistake I made, I'm going to go back and do it right, that's not sanctioned under any standard this court has approved. Every case, regardless of the different standards, every case has said, this has to far surpass lawyering that is routine or acceptable. The judge was upset that the client's lawyers didn't notify the city, though, of this change in calculations. Your Honor, the record's clear. They notified them all along the way. They said, we're going to provide more information. The problem was they kept on providing more. It wasn't that they didn't provide them enough, it was that they provided them too much, because what happened after the first set of depositions was that the comparative model, which could no longer be used, that was firefighter-sniper. The spider model. Right. The car model. Yes, but before the car model actually got started, Captain Carr went ahead and figured out, after the depositions, let's see what a difference it would make, if there's any difference. And there really wasn't much of one. I'll come back and rebuttal. Anything else? Thank you, counsel. Thank you. Thank you, Your Honor. May it please the court, my name's Irene Keyes-Walker. I'm here on behalf of the city of Akron. Just to clarify the last point, although I don't think the merits are properly before this court, Judge Gilman is absolutely right. It was not informing the city of this change in calculation from a comparator method to a gross-up method, and affirmatively hiding it from the city, because on the last day of discovery, after they had deposed Mr. Carr, and Mr. Carr said, yeah, I have a different method of doing all this, but they rejected my method. They're going with the Snyder method. They then, on the last day of discovery, sent a whole package of exhibits of Carr calculations with a cover letter that says, these are not intended to supplant or replace the Snyder calculations. They are merely a supplement to them. So counsel thought, well, he referred, Carr referred to these during the deposition, so obviously they're just giving to me, so I have them. They then continued to give Snyder exhibits as their trial exhibits, and to say in their trial brief that they're going to do the Snyder calculations and have Snyder testify. It wasn't until counsel started questioning on, or an opening statement made reference to this different calculation method, completely different calculation method, that the city said, whoa, wait a minute, this is now the third calculation method, and I deposed 23 people on the Snyder method, not only because they told me the Snyder method was what they were using, but also they told me that every single plaintiff was going to calculate their own damages, which was also false. It turned out that Snyder calculated from everybody and Carr calculated from everybody. A classic situation, not only of circumventing court orders that said you shall not use Carr and Snyder as experts, you shall not have an expert, you shall have the plaintiffs individually testify. But also, as this court held in red carpet studio versus Dales, this was a situation of a counsel who has taken action in the face of an obvious risk that it would increase the cost of the other side, 23 depositions that never needed to be taken, without advancing the litigation. That's what 1927 sanctions are for. And 1927 sanctions were- Isn't this being overplayed? Both sides had the payroll data and the spreadsheet information and could calculate the damages and argue to the jury what the damages are and whether Carr and Snyder changed their testimony or were prompted by your opposing counsel to present different or additional testimony later or even on the eve of trial. How is that such a terrible thing? Not that it's something to be approved or accepted, but why is that so sanctionable, so awful that it's a sanctionable event when both sides had the evidence and could present it? Well, Your Honor, first of all, the city did supply the payroll records within the time period after the request for discovery was made for them. Those payroll records were used for the Snyder and Carr calculations. And then what happens if you read the first two days of testimony, July 25th and July 26th, you'll see that the first witness they called was a city employee, Mr. McCloud, and they started questioning him. This issue of the new calculations came up. The court at that point brought Carr to the stand, questioned him, decided that there had been a switch in methodology and said, I'm going to exclude this. And at that point, the plaintiffs then used McCloud on the stand, on the fly, with a calculator to make a damages case that they no longer had. That's how the city was prejudiced, Your Honor. They now have prepared for a case for Snyder. They have been presented with Carr. And now the court ended up actually saying the only relevant evidence I'm going to listen to is this that is on the fly, on a bench trial, with a calculator in hand. But Carr and Snyder, neither one of them were actually expert testifiers. Neither one of them were experts, were they not, as experts are conventionally defined. And so who cares what Carr, well, I shouldn't say it like that. That's an overstatement. But their testimony doesn't have the import of expert testimony. One may, and therefore, neither side would be all that prejudiced necessarily  they could be easily disputed or argued against because they were not authoritative experts in any sense. Wasn't the judge sort of going overboard here in this sanctions order? Well, Your Honor, they continued to try to use Mr. Snyder as an expert. As soon as Mr. McCloud went off the stand, they brought Mr. Snyder on, and they started asking him about I forget the name of life tables and other things that were not part of McCloud's testimony, were not part and would have required expert testimony. And the court said, no, you can't get into that. They continued to try to inject expert type of testimony for their inflated arguments on damages. Both sides are going to argue that the testimony needs to be accepted, that they're the proponent of. But these are all argument points to be made to the trier of the fact. I'm just wondering if the judge went overboard here. And I'm seeing from the record that the city also resisted producing its own calculation of damages during discovery to some extent. And yet the only sanction the court provided against the city was the withdrawal of some prior order that the firefighters would be responsible for the city's fees associated with examining car. On the other hand, when the judge went much further against your opponents, so where's the equity in that? Because, Your Honor, the entire trial work that the city of Akron did for this retrial of damages was a waste. Preparing for first the calculation that they had used during the first trial, which they abandoned, and then a few days, two days before the depositions of the individual plaintiffs, which were only scheduled because the plaintiff said each plaintiff is going to calculate its own damages. Only two days before that do they get the Snyder calculations. So then they depose all of the plaintiffs on the Snyder calculations and are told, yes, these are our calculations. A car method was rejected. And then they get to trial, and it turns out what the judge actually hears is a simple mathematical calculation from the city witness that if they had come to us in the first time and said, okay, we agree with you, compare each person to him or herself, none of that hours and hours and hours of depositions, preparation, analysis of the Snyder method, grossly inflated, have to depose every plaintiff because they're going to calculate their own damages, none of that would have been necessary. Well, that may have been bad lawyering, maybe, but is that really vexatious, which is the standard of 1927? It seems like one thing that happened here that hasn't been talked about is the district judge issued an order on July 13, 2011, that seemed to change everything. This was just five days before the trial was originally to begin on the 18th of July, and he all of a sudden says, hey, the start date for back pay is not going to be 2005 anymore. It's now going to move up to 2007. And weren't the Snyder calculations based on changes in pay starting in 2005? And the plaintiff, as I understand their position, is, well, we couldn't use Snyder method anymore because the judge five days before trial tells us we can't go back to 2005. Well, the plaintiffs had lots of reasons. At one point they said, well, we were just going to do the Carr and the Snyder calculations to show there wasn't much difference. At one point they said, as you heard, well, we were adapting to the city's cross-examination during depositions. At one point they said, well, when this court changed the date, then we had to use a different method. But Carr himself, when he was voir dired by the judge, said, no, it wasn't the change of date by this court that made us change the method. It was the promotion of the officers, which happened July, which was ordered July 7th, much earlier. And you still have the fact that the Carr exhibits were sent to the city and done back in June, but what's critical was at that time they said these were abandoned and they never said to the city on July 13th or any time up until July 28th, we can't use Snyder anymore. We have to use Carr now. It was that deception that the court found to be vexatious and render all of the prior testimony and work of the city useless. But I do want to get back to the fact that these questions are exactly the kind of practical questions that will come up on the merits of the award and the evidence presented and all of that, and is better for that, and it is a jurisdictional question that no circuit in the United States has held that 1927 sanctions meet the collateral source doctrine, and numerous circuits, including those relied on by this court in the Starcher decision, have held just the opposite. The key is the Click versus Abilene National Bank. That was a 1987 Fifth Circuit decision that was cited by this court in Starcher along those of the line of cases, and it says right in there there is no difference between Rule 11, Rule 37, and Section 1927 sanctions for purposes of none of them meet the collateral order doctrine because they do not meet the three prongs of the collateral order doctrine. This court cited that decision in Starcher. Starcher was affirmed by the United States Supreme Court in Cunningham versus Hamilton County. I think we list four other circuits since Cunningham that have expressly looked at the question of whether 1927 sanctions are any different from inherent court sanctions or discovery sanctions under 37 for purposes of the collateral order doctrine, and they've all said no. Are these circuit cases or district court cases? Second Circuit, I think Fourth Circuit. This court has not explicitly said it. What the plaintiffs say is, well, we have cases where the Sixth Circuit has said there's no jurisdiction on a 1927 sanction or any other sanction where you haven't put a monetary amount to a sanction. All that means is that we don't even have to consider the collateral order doctrine because you don't even have a complete judgment yet. Nothing in those decisions would suggest that this court is deviating from what Click said, what this court said in Starcher, what the U.S. Supreme Court has said, which is all of these cases are better suited for decisions after final order. And the Click court gave the reason for this. It said because there is a kaleidoscope of reasons that result in a sanction, whether it's under Rule 37, 1927, or in the inherent power of the court, make a doctrine that would render that order final, unworkable as a practical matter, unwise as a policy matter, and contrary to the efficient resolution of a suit. I mean, that's exactly what happened here. There were a constellation of factors. It wasn't just the chronology. It wasn't just one thing or another. One of it was the fact that the court, because thinking the plaintiff had an undue burden, had awarded $250,000 in interim attorney's fees to the plaintiff. The city paid it. And the court said that in his questioning of counsel. He said, you know, counsel, I awarded you $250,000 because I thought that you had an undue burden, and now I found out what you were really doing was wasting the city's time with 23 depositions of people who really couldn't calculate their own damages in a method that you abandoned and never told the city you abandoned. Those are the kinds of things that are better. What's going to happen now when we have injunction hearings? When we have attorney fee hearings? Are they going to come up and say, well, you know, we think that we have attorney's fees for doing the second part of the trial. I mean, the court, all of these issues are better decided at the end of the case, and the Starcher case expressly says these reputational matters and the importance, no matter how important the underlying suit is or the underlying issues are, whether it's a civil rights action or something else, we have to give the courts the discretion or deterrence as well as punishment to be able to maintain control in the efficient management of the lawsuit. And if we allow counsel to file an interlocutory appeal every time a sanction is ordered, we're going to have a situation where we're interrupting the court and people are going to use that as a litigation strategy. That's why the Cunningham Court says we eschew the idea that we look at a case-by-case basis of whether it's entwined with the merits of the case. We categorically say all sanctions, economic sanctions against counsel are not collateral. Anything else from my colleagues? Thank you, Your Honor. Very brief, Your Honor. There is no categorical rule that all sanctions are beyond the interlocutory appeal. We know that some sanctions are. There's been much made in this about what was done in terms of misleading. It's simply an unfair reading of the record to think of it that way. First of all, exhibits. Well, they had all these in the exhibit. Yes. I want to be clear. The firefighters did not concede that the 2007 date is the right date. They believe the 2005 date is. The eligibility list, many of the favored firefighters were promoted in 2005 and 2006. This was the last date of the eligibility list the district court used. They're going to raise that issue perhaps, but the point is they need to have that evidence in the record. They said the trial brief was filed, and in the brief the city of Akron files they said the trial brief was filed and yet it didn't say anything about the 2007 date. Look at when the trial brief was filed. It was filed nearly four hours before on July 13th, the judge's order, nearly four hours before the judge's order on changing that. Talk about the completely different method. That's been covered. You can't be a comparator method anymore when the judge changes it given the step increases. It just would have been wrong for the lawyers to continue after the judge changed the formula. Each plaintiff is going to testify. Actually, that's not what was said. If you recall, they said we won't do an expert. We're going to rely on several things, including the plaintiff's testimony, and at that time they were seeking emotional distress damages. Each plaintiff has to testify for emotional distress, but at least in my four decades of doing this, I've never heard that each plaintiff has to testify about mathematical, and let's be clear. The district court said in the back pay order this was mathematical. Captain Carr, we've put for you in the briefs the voir dire. I think courts sometimes think lawyers don't like judges ever to ask questions of lay witnesses. We don't mind experts. They can handle themselves. There's a reason for that. It isn't because we want to hide the truth. It's because lay witnesses don't do very well when a judge asks questions they aren't prepared for and they get dates and other matters confused. The judge is quite an authority figure. Look at his testimony. He says, I'm not sure of the date. He says, I know it was after my vacation. After his vacation, and of course it had the new date, 2007. It was after, not before. Finally, the back pay appeal. All these issues should be resolved then. None of these issues are going to be resolved then. The firefighters called the witness on whose testimony the judge relied. None of these issues will be before any appeal on the back pay. This is strictly a retrospective question of vexatious behavior, which we believe never happened and should not have been sanctioned the way it was or in the process which was not provided.  Thank you, counsel. The case will be submitted. Court is called on the next case.